UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

               :

**EVERETT HUGHES,**              :

            Plaintiff,     :

               :

       **- against -**      :        **<u>MEMORANDUM DECISION AND</u>**

               :               **<u>ORDER</u>**

**CITY OF NEW YORK, BOARD OF**  :

**EDUCATION OF THE CITY SCHOOL**  :

**DISTRICT OF THE CITY OF NEW YORK,**  :   15 Civ. 5269 (AMD) (SIL)

**NEW YORK CITY DEPARTMENT OF**

**EDUCATION, NEW YORK CITY**  :

**COMMUNITY SCHOOL DISTRICT 19,**  :

**CARMEN FARIÑA, and JOYCE STALLINGS-**  :

**HARTE,**

               :

            Defendants.   :

------------------------------------------------------------- X

**ANN DONNELLY,** District Judge.

      The plaintiff brought this civil rights action against New York City Department of

Education ("DOE") defendants in connection with the termination of his employment with the

Center for Educational Innovation–Public Education Association ("CEI" or "CEI-PEA") and the

prohibition against his working in New York City public schools.  The plaintiff seeks monetary

damages and injunctive relief for alleged violations of Fourteenth Amendment Due Process and

First Amendment associational rights pursuant to Section 1983.  He also raises state law claims.

The defendants move to dismiss the complaint in its entirety, pursuant to Rule 12(b)(6).  For the

reasons set out below, the defendants' motion is granted, and the complaint is dismissed in its

entirety.

# BACKGROUND

The plaintiff is a former New York City educator. When he retired from the Department of Education in 2011, he had worked for the DOE for more than 30 years, and had most recently served as the principal of Intermediate School ("I.S.") 292 for almost ten years. (Compl. ¶ 29.) Following his retirement, CEI hired the plaintiff to assist DOE principals in Brooklyn. (Compl. ¶ 1.) CEI is a non-profit organization that contracts with the DOE to provide educational support services to schools and administrators. (Compl. ¶ 1.)

According to the plaintiff, he had "every reason to believe that he would continue to be employed by CEI" because he "was highly effective in fulfilling his employment responsibilities and, upon information and belief, CEI was pleased with his work performance." (Compl. ¶ 65.) The plaintiff alleges that he had a "renewing annual contract with CEI," (Compl. ¶ 33), and that he "contracted to work with CEI again each year, including the 2014–2015 school year." (Compl. ¶ 34.) Although the plaintiff refers to and characterizes the contracts, he did not append them to his complaint. The defendants, in support of their motion to dismiss, submitted the August 29, 2011 letter from CEI to the plaintiff extending an offer of employment, the form signed by the plaintiff acknowledging his receipt of the employee manual, and the July 1, 2013 contract between CEI and the Board of Education of the City School District of the City of New York.[1]

---

[1] Generally, in connection with a motion to dismiss under Rule 12(b)(6), the court may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). As here, where documents were not appended to the complaint, the court may only consider them if they were "incorporated in [the complaint] by reference" or if they are documents "upon which [the complaint] *solely* relies and . . . [are] *integral to the complaint.*" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original)). Because the contracts governing the plaintiff's relationship with CEI and the Board of Education's engagement with CEI are incorporated into the complaint by reference, I consider these documents for the purpose of the defendants' Rule 12(b)(6) motion. *See, e.g.*, *Kunda v. Caremark PhC, L.L.C.*, 119 F. Supp. 3d 56, 58 n.2 (E.D.N.Y. 2015) (district court considered Employee Handbook on motion to dismiss because document was incorporated by reference in the plaintiff's complaint in pleading his breach of contract claims).

In the August 29, 2011 letter, CEI offered the plaintiff a job and explained that his position was "contingent on . . . [the] contract with the New York City DOE, which will expire on June 30, 2012 and therefore the position may be eliminated at that time." (Ex. A to Marks Decl. (25-2).) Further, the letter stated:

> [Y]ou are being employed as an at-will-employee, meaning you retain the right to resign, without notice or cause and CEI-PEA retains the same right to terminate your employment without notice or cause. Your employment is for no definite term, regardless of any other oral or written statement by any other CEI-PEA representative.

(Ex. A to Marks Decl. (ECF No. 25-2).) This representation was repeated in the receipt and acknowledgment of the employee manual, which the plaintiff signed. (Ex. B to Marks Decl. (ECF No. 25-3).)

CEI separately contracted with the Board of Education of the City School District of the City of New York for the provision of support services in New York City public schools.[2] (Ex. C to Marks Decl. at 1 (ECF No. 25-4).) Under the terms of that contract, CEI was to provide "direct, personal services" necessary to fulfill the support obligations under the agreement. (Ex. C to Marks Decl. at 9 (ECF No. 25-4).) However, the contract expressly stated that "[n]one of the employees or consultants engaged by [CEI] shall be considered to be within the employ of the Board or the City of New York." (Ex. C to Marks Decl. at 9 (ECF No. 25-4).) Similarly, the agreement provided that CEI "shall have the right to remove employees and consultants from School Sites and to terminate the contracts of employees and consultants at will." (Ex. C to Marks Decl. at 10 (ECF No. 25-4).)

Though CEI reserved the right to hire and fire its employees at will, the contract gave the Board of Education "the right to demand the removal of any [CEI] employee or consultant from

---

[2] The relevant contract went into effect on July 1, 2013 and extends through June of 2018. (Ex. C to Marks Decl. at 1 (ECF No. 25-4).)

a school site or from continuing to provide services" under certain circumstances. (Ex. C to Marks Decl. at 10 (ECF No. 25-4).) Specifically, the Board was permitted to demand removal of a contractor "if in its reasonable discretion" it found an individual "unacceptable for any lawful reason." (Ex. C to Marks Decl. at 10 (ECF No. 25-4).) In relevant part, those lawful reasons included, but were not limited to, security reasons, demonstration that the individual was a threat to staff at a school site, or unsatisfactory performance. (Ex. C to Marks Decl. at 10 (ECF No. 25-4).)

While the plaintiff does not plead that he personally contracted with the Department of Education for employment in the years after 2011, he alleges that "[b]y virtue of CEI's contract with the Board and/or the DOE, and Mr. Hughes' employment relationship with CEI, Mr. Hughes had a contractual right to work in the New York City public schools, a reasonable and legitimate expectation of continued work in the New York City public schools, and effectively, a license to work in the New York City public schools." (Compl. ¶ 35.)

The plaintiff alleges that the "DOE was a joint employer together with CEI in that there was an interrelationship of operations, and CEI and the DOE handled certain aspects of the employer-employee relationship jointly." (Compl. ¶ 75.) He asserts further that "[t]he DOE was directly involved in and affected Mr. Hughes' employment duties, as well as the terms and conditions of his employment, as evidenced by the defendants' conduct." (Compl. ¶ 75.)

During the 2014–2015 school year, the plaintiff worked at I.S. 292, a school in New York City Community School District 19. (Compl. ¶¶ 36–37.) Joyce Stallings-Harte was the superintendent for that district. (Compl. ¶ 38.)

On the morning of September 17, 2014, CEI directed the plaintiff to report to I.S. 292 because a demonstration was expected to take place at the school. (Compl. ¶ 39.) The plaintiff

alleges that he arrived at the school parking lot at around 7:30 a.m. so that he could "observe the demonstration from a distance." (Compl. ¶ 42.) He claims that around 7:50 a.m., Superintendent Stallings-Harte drove by the school in her car, but that the plaintiff neither spoke with her nor approached her car. (Compl. ¶¶ 44–45.)

That same day, the plaintiff was instructed by a CEI executive to report to the CEI administrative offices. (Compl. ¶ 48.) When he arrived, he learned that DOE Chancellor Carmen Fariña had instructed CEI management to remove the plaintiff from his CEI school placement, and that the plaintiff was banned from working in any New York City school until further notice. (Compl. ¶ 49.)

According to the plaintiff, Chancellor Fariña told CEI management that it had been reported to her that the plaintiff had "orchestrated the demonstration at I.S. 292, caused a 'riot,' and led a group of people who damaged Superintendent Stallings-Harte's car." (Compl. ¶ 50.) Additionally, the plaintiff alleges that Chancellor Fariña told CEI management that the plaintiff was "not a good guy" because there had been complaints about him when he was employed by the DOE. (Compl. ¶ 59.) The plaintiff denies these accusations. (Compl. ¶¶ 50, 60.)

The plaintiff alleges further that Superintendent Stallings-Harte made a false report to the police, claiming that the plaintiff harassed her at the demonstration. (Compl. ¶ 52.) The plaintiff reports that a police officer told him that no criminal charges would be pursued against the plaintiff because the police did not believe the Superintendent's account. (Compl. ¶ 53.)

On October 1, 2014, CEI management told the plaintiff that his employment with CEI would be terminated because CEI "works at the behest of the Chancellor." (Compl. ¶ 62.) The following week, the plaintiff learned that this termination would take effect immediately, which was months before the end of his contract. (Compl. ¶ 63.) CEI continued to contract with the

Department of Education to provide support to intermediate public schools in New York City. (Compl. ¶ 64.)

The Department of Education Office of Special Investigations ("OSI") and the School Safety Division ("SSD") investigated the accusations lodged against the plaintiff and the circumstances surrounding the demonstration. (Compl. ¶¶ 54, 68–69.) The plaintiff claims that he was never contacted during the investigation, nor was he told of its outcome. (Compl. ¶¶ 68–71.) He alleges upon information and belief that these agencies concluded their investigation on or before January of 2015, and found that Superintendent "Stallings-Harte's accusations as to what occurred at the demonstration on September 17, 2014 at I.S. 292 were unsubstantiated." (Compl. ¶¶ 69, 71.)

As a result of the defendants' conduct, the plaintiff claims that his annual contract with CEI was terminated, and that he did not receive the compensation that he otherwise would have earned during the 2014-2015 school year, and those following. (Compl. ¶ 74.) According to the plaintiff, other educational consulting agencies that contract with the Department of Education will not employ him because of Chancellor Fariña's ban on his employment in the New York City public schools. (Compl. ¶ 74.) He alleges that this ban is ongoing, and that as a result, he "is unable to obtain employment within his profession of providing consulting services to New York City public school educators." (Compl. ¶ 77.)

The plaintiff filed this Section 1983 action in September of 2015 against the City of New York, the New York City Department of Education, the Board of Education of the City School District of the City of New York, the New York City Community School District 19, Chancellor Carmen Fariña, and Superintendent Joyce Stallings-Harte. After a pre-motion conference, the

defendants moved to dismiss pursuant to Rule 12(b)(6), and the plaintiff opposed. For the reasons discussed below, the complaint is dismissed.

## DISCUSSION

A court considering a motion to dismiss must accept as true the factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, a claim will only survive if the law recognizes the claim, and if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Twombly*, 550 U.S. at 556). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, consideration is "limited to the factual allegations in plaintiff['s] [] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit." *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (alterations in original).

## I.      Administrative Defendants

As an initial matter, the plaintiff brings this action against the City of New York, individual defendants, and the following department defendants: the New York City Department of Education, the Board of Education of the City School District of the City of New York, and the New York City Community School District 19. "[D]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F.

Supp. 2d 463, 477 (E.D.N.Y. 2002) (collecting cases). The plaintiff does not allege that the department defendants are anything more than administrative arms of the City of New York, and neither of the parties addressed this issue in their briefing. Because the complaint is dismissed in its entirety for other reasons, I decline to dismiss *sua sponte* the claims against the department defendants. Nevertheless, should the plaintiff seek leave to amend his complaint, he is to either omit the department defendants from his complaint or is to allege some basis for this Court's jurisdiction to consider the claim against them.

## II. Procedural Due Process

The Fourteenth Amendment's Due Process Clause protects people from deprivations of liberty or property without due process of law. Procedural due process analysis proceeds in two steps: the court determines "whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed . . . were constitutionally sufficient." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). As a threshold matter, those who seek to invoke the procedural protections of the Due Process Clause must first establish that one of the protected interests—liberty or property—is at stake. *Id.* at 59 (citation omitted). The plaintiff alleges deprivations both of liberty and property. The alleged property is the plaintiff's employment with CEI; the alleged liberty is the plaintiff's freedom to practice his chosen profession. I address each in turn.

### A. Property Interest

Protected property interests "are not created by the Constitution." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

law." *Id.*; *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). It is well-established that a public employee has a property interest in his job if he is entitled to continued employment absent "just cause" for termination, *Ciambriello*, 292 F.3d at 313; *see also Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) ("a protectable property interest may arise in a situation where an employee may be removed only for cause."). In the same way, an "employee of a government contractor" may "have a constitutionally protected property interest in continued employment." *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 407 (2d Cir. 2015) (citing *Stein v. Bd. of City of New York, Bureau of Pupil Transp.*, 792 F.2d 13 (2d Cir. 1986)). Regardless, "at-will employment is *not* a constitutionally protected property interest." *Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 89 (2d Cir. 2001) (emphasis added).

The defendants contend that the plaintiff was an at-will employee, and as a consequence, did not have a property interest in continued employment with CEI. In support of this argument, the defendants point to the letter that CEI sent to the plaintiff in August of 2011, and the acknowledgment of the employee handbook that the plaintiff signed, both of which explicitly state that the plaintiff was an at-will employee, and that CEI retained the right to terminate him "without notice or cause."

In response, the plaintiff posits two theories under which he asserts that he could not be discharged absent just cause—and thus that he had a protectable property interest. Neither theory is persuasive.

First, the plaintiff claims that discovery concerning his employment with CEI and the "course of dealing" between the plaintiff and CEI will reveal that he had a "legitimate expectation of continued employment." (Pl.'s Opp. to Mot. to Dismiss at 8–9 (ECF No. 29).) The Second Circuit rejected this "course of dealing" argument in *Looney v. Black*, 702 F.3d 701

(2d Cir. 2012), and held that in order to survive a motion to dismiss a procedural due process claim, the plaintiff must allege that he was party to a "writing or verbal communication" that indicated his employment would continue, absent just-cause for termination. *Id.* at 708. In this case, the plaintiff does not allege, and the documents do not support, that he had any written or spoken guarantee by CEI that his employment was anything other than at-will. In fact, the documentary evidence demonstrates precisely the opposite, and provides explicitly that the plaintiff was an at-will employee. Thus, he is left with "nothing more than a 'unilateral expectation' that he would continue to be reappointed to his position . . . . Such a unilateral expectation does not qualify as a constitutionally protected property right." *Looney*, 702 F.3d at 709.

Second, the plaintiff argues that the contract between CEI and the Department of Education gave him a protectable property interest. The Second Circuit recently rejected a similar contention in *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398 (2d Cir. 2015). In that case, the United States Marshals Service ("USMS") contracted with a private company to employ court security officers ("CSOs") to serve in a court security program. *Id.* at 402. That contract empowered the USMS to remove a CSO from the program, and gave a CSO who was subject to removal fifteen days from the initial notice to respond in writing. *Id.* at 407. The Second Circuit rejected the defendants' argument that the plaintiff was seeking to assert procedural rights derived from the agreement between the USMS and the government contractor. *Id.* In doing so, the Court held that the plaintiff was "not a party to the [contractor]–USMS contract and has no standing to assert that it was breached." *Id.* In the instant case, the plaintiff was not a party to the agreement between CEI and the Department of Education, and thus he cannot claim that his protected property interest arises from that agreement.

Because the plaintiff alleges only a unilateral expectation that his employment would continue, he has not stated a claim that he had a protectible property interest. Accordingly, the plaintiff's deprivation of property claim is dismissed.

B. *Liberty Interest*

In addition to the purported deprivation of property, the plaintiff claims that the defendants caused injury to his name and reputation, without due process, in violation of the Fourteenth Amendment. An individual's interest in his good reputation alone, absent a more "tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004) (citation omitted); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."). Consequently, to state a due process claim based on a liberty interest, the plaintiff must plead stigma to his good name plus "some other tangible element in order to rise to the level of a protectible liberty interest"—a so-called stigma-plus claim. *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994).

In an action alleging termination (or here a ban) from government employment, a plaintiff must satisfy three elements in order to establish the stigma component of the stigma-plus claim. First, he must show that the "government made stigmatizing statements" about him that call into question his "good name, reputation, honor, or integrity." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (citation omitted). Statements that "'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to

practice his or her profession' will satisfy the stigma requirement."[3]  *Segal*, 459 F.3d at 212

(quoting *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630–31 (2d Cir.

1996)).  Second, the stigmatizing statements must have been made public.  *Segal*, 459 F.3d at

212 (citation omitted).  And third, the plaintiff must demonstrate that the stigmatizing statements

were made in "close temporal relationship" to the plaintiff's deprivation of liberty.  *Id.* at 212–13

(citing *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005)).  Neither the first factor—that the

stigmatizing statements were made—nor the third—that the statements were close in time to the

plaintiff's exclusion from New York City schools—is in dispute for purposes of this motion.

(Defs.' Mot. to Dismiss at 16 (ECF No. 26).)

Instead, the defendants argue that the plaintiff does not state a stigma-plus claim because

the alleged stigmatizing statements were not made public.  In support of this contention, the

defendants make these assertions: that Chancellor Fariña's alleged report to CEI executives was

not public because of the Board of Education's contractual relationship with CEI, that

Superintendent Stallings-Harte's complaint to the New York Police Department was a statement

to law enforcement by a complaining witness and thus not public, and that the imposition of a

ban "is not itself a stigmatizing statement, but rather an action taken by the Chancellor."  (Mot.

to Dismiss at 18 (ECF No. 26).)

The allegations arising from Chancellor Fariña's communication with CEI executives do

not state a stigma-plus claim because the Board of Education and CEI were in a contractual

relationship, and the Chancellor was entitled under the contract to demand the removal of any

CEI employee from a school site.  *See Bai Haiyan v. Hamden Pub. Sch.*, 875 F. Supp. 2d 109,

131 (D. Conn. 2012) (reasonable jury could not find that defendant made stigmatizing statements

---

[3] Generally, a plaintiff need only allege the falsity of the stigmatizing statements, not prove that they are false.
*Patterson*, 370 F.3d at 330.

public when it informed the third party, with which it had a contractual relationship regarding the plaintiff's participation in a guest teacher program, and the defendant was contractually obligated to maintain regular communication with the third party).  Of necessity, the Board must have the ability to communicate to CEI that its employee may no longer work at one of the Board's school sites, and the reasons for the Board's decision.  This disclosure is akin to internal communications among officials, and does not constitute disclosure to the public.  The alternative outcome—that this kind of communication could be construed as "public" for purposes of a Due Process action—is simply not tenable.

Nor do I find that a report to the police constitutes a public disclosure for purposes of a stigma-plus claim.[4]  The plaintiff cites no authority for his argument that the mere making of a report to law enforcement is a public statement for purposes of the stigma-plus analysis.  Instead, the plaintiff argues that filing a false police report may support a defamation claim, and "[t]here is no reason a stigmatizing claim should be treated differently than a defamation claim."  (Pl.'s Opp. to Mot. at 17–18 (ECF No. 29).)  This argument is not convincing.  Simply because an allegedly false report to the police might be evidence of defamation does not make the report a public statement.  As a general matter, citizen reports or complaints to police officers are not open to public view; the police do not themselves publicize the reports, nor could a citizen simply walk into a precinct and thumb through the complaints.

However, taking the facts in the light most favorable to the plaintiff, the "ban" from New York City schools was a publicly-made stigmatizing statement.  The plaintiff alleges that New York City public school principals and educational consulting agencies have declined to work with him because Chancellor Fariña's ban remains in place.  The plaintiff also asserts that

_____

[4] The plaintiff does not allege that the New York Police Department made the report public.

discovery is appropriate to determine how other educational consulting companies and area principals learned of the Chancellor's ban on his employment. (Pl.'s Opp. to Mot. to Dismiss at 18 (ECF No. 29).) It is a reasonable inference that the defendants noted in the plaintiff's personnel file that he was banned from working in New York City schools, *see Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631–32 (2d Cir. 1996) (public disclosure requirement is satisfied where the stigmatizing charges are placed in the discharged employee's personnel file), or that the defendants placed the plaintiff on an "Ineligible List," which may satisfy the contemporaneous public disclosure requirement. *Behrend v. Klein*, No. 04-cv-5413-NGG-SMG, 2006 WL 2729257, at *9 (E.D.N.Y. Sept. 25, 2006). The plaintiff's complaint alleges sufficient details to nudge his claim over the line from possible to plausible.

I conclude that in connection with the ban the plaintiff has adequately pled "stigma" and the "plus." As alleged in the complaint, the defendants' ban of the plaintiff denigrated his professional competence and foreclosed future business opportunities for him. Consequently, the plaintiff was entitled to "a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" *Segal*, 459 F.3d at 213 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).

In addition to stating a claim of deprivation of his liberty interests, the plaintiff must also demonstrate that he was denied due process of law. "[T]he availability of adequate process defeats a stigma-plus claim." *Segal*, 459 F.3d at 213. In this Circuit, a post-deprivation name-clearing hearing is adequate to protect the kind of liberty interests at stake in a stigma-plus claim. *Id.* at 214. The plaintiff did not pursue an Article 78 proceeding, which would have been the appropriate state vehicle to address his claims.

The plaintiff argues that an Article 78 proceeding "would not provide sufficient process." (Opp. to Mot. to Dismiss at 21 (ECF No. 29).) However, the Second Circuit has repeatedly held that "[a]n Article 78 proceeding provides the requisite post-deprivation process." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011); *see also Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) ("access to post-termination process, such as an Article 78 hearing, is sufficient to satisfy constitutional requirements."). Indeed, in an Article 78 proceeding, a petitioner may raise constitutional issues, submit affidavits and other written proof of his claims, and if there is a triable issue of fact, may obtain a trial. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996).

Moreover, an Article 78 proceeding must be commenced "within four months after the determination to be reviewed becomes final and binding . . . ." N.Y. C.P.L.R. 217(1); *Best Payphones, Inc. v. Dep't of Info. Tech. & Telecommunications of City of New York*, 5 N.Y.3d 30, 34 (2005). This abbreviated statutory time frame is motivated by "strong policy, vital to the conduct of certain kinds of governmental affairs, that the operation of government not be trammeled by stale litigation and stale determinations." *Solnick v. Whalen*, 49 N.Y.2d 224, 232, (1980); *see also Best Payphones, Inc.*, 5 N.Y.3d at 34 ("A strong public policy underlies the abbreviated statutory time frame: the operation of government agencies should not be unnecessarily clouded by potential litigation.").

In this case, it is undisputed that the plaintiff did not pursue an Article 78 proceeding. The plaintiff attempts to excuse this failure by arguing that the Article 78 proceeding was not available to him because the decision to ban him from working in the New York City public schools was not "final," and thus could not be challenged in an Article 78 proceeding. He is wrong. In ascertaining what constitutes a "final and binding" agency action for statute of

limitations purposes, the New York Court of Appeals has articulated two requirements: (1) "the agency must have reached a definitive position on the issue that inflicts actual, concrete injury;" and (2) "the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." *Best Payphones, Inc.*, 5 N.Y.3d at 34 (citations omitted).

Here, according to the plaintiff's representations in the complaint, the agency reached a definitive position that caused a concrete result, and the plaintiff had no further recourse to ameliorate the harm. Specifically, the plaintiff asserts that Chancellor Fariña "refused to lift her ban on Mr. Hughes' employment in the schools" in September of 2014, that in October of 2014 he was terminated by CEI because the chancellor's ban remained in effect, and the Office of Special Investigations concluded an investigation in January of 2015, after which the ban remained in place. Taking the facts in the light most favorable to the plaintiff, as of January of 2015, the plaintiff "knew or should have known" that he was "aggrieved" by the Chancellor's September of 2014 decision to ban him from working in the New York City public school system. *See Brown v. Rhea*, 121 A.D.3d 537, 537 (1st Dep't 2014) (affirming dismissal of Article 78 proceeding as barred by four-month statute of limitations); *see also 90-92 Wadsworth Ave. Tenants Ass'n v. City of New York Dep't of Hous. Pres. & Dev.*, 227 A.D.2d 331, 331–32 (1st Dep't 1996), *as amended* (Mar. 20, 1997) ("In circumstances where a party would expect to receive notification of a determination, but has not, the Statute of Limitations begins to run when the party knows, or should have known, that it was aggrieved by the determination."). Under the circumstances, the plaintiff was on notice of a final determination as of at least January of 2015.

The availability of an Article 78 proceeding constituted the requisite post-deprivation process, even though the plaintiff did not pursue it. Because the availability of such a hearing defeats the plaintiff's stigma-plus claims, his deprivation of liberty claim is dismissed.

### III.     First Amendment Claim

According to the plaintiff, CEI directed him to observe the demonstration at I.S. 292. He alleges further that the DOE defendants mistakenly believed that he participated in the demonstration at I.S. 292, and that they retaliated against him for what they perceived as his association with the demonstration. This, the plaintiff claims, constitutes a violation of his First Amendment freedom of expressive-association.

The First Amendment, applicable to the City through Section 1983, prohibits a municipality from abridging an individual's "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000). Public employees and government contractors do not give up their First Amendment rights to speak on matters of public concern by virtue of their acceptance of government work. *See Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).[5] Nonetheless, employees are not shielded from discipline for expressions that they make pursuant to their professional duties. *Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006).

In a traditional First Amendment speech case, courts aim to strike a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Piscottano v. Murphy*, 511 F.3d 247, 269 (2d Cir. 2007)

---

[5] Just as an employee would be, an at-will government contractor is protected by the First Amendment from retaliatory government action. *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 685 (1996).

(quoting *Pickering*, 391 U.S. at 568). To make this determination, a court must decide: (1) whether the employee's speech as a citizen was on a matter of public concern, and (2) whether the employer has shown that the employee's interest in expressing himself on that matter is outweighed by injury that the speech could cause to the employer's operations. *Piscottano*, 511 F.3d at 269–70. Whether the substance of an employee's expressive conduct is a matter of public concern is a threshold question. *Id.* at 270.

The Second Circuit extended this rule to expressive association claims, and held that in order to prevail, a plaintiff must demonstrate that his associative activity touched on a matter of public concern. *Cobb*, 363 F.3d at 107; *see also Piscottano*, 511 F.3d at 273 ("in order to prevail on a First Amendment freedom-of-expressive-association claim, a government employee must show, *inter alia*, that his expressive association involved a matter of public concern—just as would a government employee complaining of a violation of his right to freedom of speech."). In reaching this conclusion, the court reasoned that because the "right of association is derivative of the First Amendment rights of free speech and peaceful assembly," it would be "anomalous to exempt it from *Connick*'s public concern requirement."[6] *Cobb*, 363 F.3d at 105.

The Supreme Court has instructed that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In this case, the plaintiff concedes that he went to the demonstration at the direction of his employer. Because he was there as part of his job, any restriction on his conduct at the demonstration "simply reflects the exercise of employer control over what the employer itself has commissioned." *Vigil v. S. Valley Acad.*, 247 F. App'x 982,

---

[6] *Connick v. Myers*, 461 U.S. 138 (1983).

989 (10th Cir. 2007). The plaintiff's associative conduct was at CEI's direction and thus pursuant to his official duties; the plaintiff cannot state a cognizable First Amendment claim.

The Supreme Court's recent decision in *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412 (2016), does not compel a different result. In that case, the plaintiff, a police officer, alleged that his supervisors at the police department demoted him because of their belief, which turned out to be mistaken, that he had engaged in political activity. *Id.* at 1416. The Court held that the employee was entitled to challenge the unlawful action under the First Amendment and Section 1983, even if the employer had made a factual mistake about the employee's behavior. *Id.* at 1418.

The plaintiff contends that because his termination was the result of a mistaken belief that he participated in the demonstration, he too was deprived of a right secured by the Constitution. However, in *Heffernan*, the plaintiff's expressive activity did not occur at the behest of his employer. Under the circumstances in this case, whether or not the defendants misapprehended the plaintiff's conduct at the demonstration is irrelevant. Because the plaintiff's associative activity was pursuant to his official duties, he was not acting as a citizen for First Amendment purposes.

The plaintiff's Section 1983 claim for deprivation of his First Amendment freedom to expressive-association is dismissed.

## IV. Substantive Due Process Claim

The plaintiff pleads that the defendants also violated his substantive due process rights. To maintain a Fourteenth Amendment claim under a theory of substantive due process, the plaintiff "must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir.

2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Here, at most, the defendants sought to remove an at-will government contractor from its school sites and banned him from working in New York City public schools, without conducting a name-clearing hearing. This conduct, even if it constitutes an abuse of government power—a dubious proposition under the circumstances—does not "shock the conscience." It is simply not the kind of "heinous behavior" recognized in the case law as "conscience shocking." *See Cusick v. City of New Haven*, 145 F. App'x 701, 703 (2d Cir. 2005) (there is a "narrow range" of intentional conduct that, if proven, is "conscience-shocking").

Moreover, what the plaintiff says is "shocking" about the defendants' conduct is not the details of the acts themselves. He does not claim that any of the defendants did anything that was particularly outrageous. Rather, he claims that it is the alleged deprivations of his rights that "shocks the conscience." The Second Circuit has held that "where a specific constitutional provision prohibits government action," the plaintiff cannot prevail by making "reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005); *see also Miller v. New York City Dep't of Educ.*, 622 F. App'x 38, 40 (2d Cir. 2015). Because the plaintiff's substantive due process claim is "subsumed in [his] more particularized allegations," it is dismissed. *Velez*, 401 F.3d at 94.

## V.  State Law Claims

In light of the dismissal of all federal claims in this action, and upon consideration of the pertinent factors of judicial economy, convenience, fairness, and comity, I decline to exercise supplemental jurisdiction over the state law claims and dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction.").

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is granted, and the complaint dismissed in its entirety.

**SO ORDERED.**

_s/  Ann M. Donnelly_____

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
   June 23, 2016